APR 14 2026

UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF MISSOURI SOUTHERN DIVISION

Mirza R Uddin, [True Name: Mirza Reazuddin]

Petitioner pro se,

V.

Mathew Puter, In Official Capacity As Kansas City Field Office Director of ICE;

Todd Lyons, In Official Capacity As Acting Director Of ICE; Markwayne Mullin, In omoai Capacity As Secretary Of Department Of Homeland Security (DHS); Marcos Charles, In Official Capacity As Director Of The Executive Office Of Immigration Review (EOIR); Pamela Bondi, In Official Capacity As Attorney General Of United States; Jacob Welch, In Official Capacity As Warden Chase County; Jim Arnott, **in abeyance** and in his official capacity as warden of Greene County detention facility,

Respondents.

Case No. 6:26-cv-03229-MBB

## COMPLAINT AND PETITION FOR WRIT OF HABEAS CORPUS

Dated: March30, 2026

Mirza Reazuddin, Pro Se

Chase County Facility

301 S Walnut St.

Cottonwood Falls, KS 66845

(Petitioner unnoticed for transferred to Green County, MO after April 2nd, 2026)

# TABLE OF CONTENTS


TABLE OF AUTHORITIES .......... 3

INTRODUCTION .......... 4

I. PARTIES .......... 5

II. EXHAUSTION OF REMEDIES .......... 7

III. BACKGROUND .......... 9

IV. STANDARD .......... 11

V. JURISDICTION .......... 12

VI. DUE PROCESS .......... 13

VII. COMPLAINTS FOR RELIEF .......... 15

COUNT I: INVALID FIELD WARRANT VIOLATES DUE PROCESS .......... 15

COUNT II: PETITIONER'S MANDATORY DETENTION VIOLATES HIS CONSTITUTIONAL RIGHT ... 16

COUNT III: GOVERNMENT'S CULPABLE MISCONDUCT VIOLATES THE BILL OF RIGHTS GUARANTEED BY THE US CONSTITUTION .......... 17

COUNT IV: IMPOSSIBILITY OF PROOF—RAISING THE DEAD—AN ACT AGAINST NATURE—MAKES DEPORTABILITY UNFORESEEABLE .......... 18

COUNT V: PETITIONER'S SERIOUS HEALTH CONCERNS IN DETENTION IS DIMINUTION IN HIS QUALITY OF LIFE .......... 19

VIII. TEMPORARY RESTRAINING ORDER (TRO) .......... 20

IX. COST REIMBURSEMENT REQUEST .......... 21

X. CONCLUSION .......... 21

XI. PRAYER FOR RELIEF .......... 22

XII. PROOF OF SERVICE .......... 23

# TABLE OF AUTHORITIES

## CASES

Addington v. Texas, 441 U.S. 418 (1979) .......... 13

Arango-Marquez v. INS, 346 F.3d 892 (9th Cir. 2003) .......... 7

Ashley v. Ridge, 288 F. Supp. 2d 662 (D.N.J. 2003) .......... 8

Bell v. Wolfish, 441 U.S. 520 (1979) .......... 20

Boumediene v. Bush, 553 U.S. 723 (2008) .......... 8

Demore v. Kim, 538 U.S. 510 (2003) .......... 11,12,17

Estelle v. Gamble, 429 U.S. 97 (1976) .......... 5

Fay v. Noia, 372 U.S, 391 (1963) .......... 12

Hensley v. Municipal Court, 411 U.S. 345 (1973) .......... 12

Hoxha v. Holder, 559 F.3d 157 (3d Cir. 2009) .......... 8

INS v. Lopez-Mendoza, 468 U.S. 1032 (1984) .......... 15

Jennings v. Rodriguez, 583 U.S. _(2018) .......... 17

Kholyavskiy v. Schlepp, 9 F.4th 946 (8th Cir. 2021) .......... 2

Preiser v. Rodriguez, 411 U.S. 475 (1973) .......... 11

Rochin v. California, 342 U.S. 165 (1952) .......... 16

Rumsfeld v. Padilla, 542 U.S. 426 (2004) .......... 12

United States v. Salerno, 481 U.S.739 (1987) .......... 13

Woodby v. INS, 385 U.S. 276 (1966) .......... 11

Zadvydas v. Davis, 533 U.S. 678 (2001) .......... 12,13,14,19

## STATUTES

5 U.S.C. § 702 .......... 12

8 U.S.C. § 1103(a) .......... 7

8 U.S.C. § 1103(g) .......... 7

8 U.S.C. § 1226(c) .......... 9,16

8 U.S.C. § 1357 .......... 15

28 U.S.C § 96 .......... 12

**28 U.S.C** § 1331 .......... 12

28 U.S.C. § 1391(c)(B) .......... 12

28 U.S.C. § 1651 .......... 12

28 U.S.C. § 2241 .......... 4,5,11,12,13

28 U.S.C. § 2412 .......... 22

Immigration and Nationality Act § 236(c) .......... 9

Immigration and Nationality Act § 237(a)(2)(A)(iii) .......... 9

Immigration and Nationality Act § 237(a)(3)(D) .......... 9

**INTRODUCTION** Complainant and Petitioner, Mirza Reazuddin (booked as Mirza Uddin), pro se, files his Complaint and Petition for Writ of Habeas Corpus and respectfully requests that this Honorable Court grant and issue a Writ pursuant to 28 U.S.C. § 2241. Petitioner also seeks a Temporary Restraining Order and Reimbursement of Costs under the

Equal Access to Justice Act (EAJA).

**PLEASE NOTE:** Petitioner is in detention and respectfully requests that due to his lack of access to the Court's DAR Recordings, Court Records, and Legal Assistance from the Detention Facility, the Court will construe this Complaint and Writ liberally in his favor.

Estelle v. Gamble, 429 U.S. 97, 106 (1976).

**I.PARTIES**

1. Petitioner, Mirza Reazuddin, a United States Citizen, is currently detained by Respondents under the name Mirza Uddin at the Chase County Facility pending removal proceedings. Note: Upon information and belief, and based on a cursory notification from facility staff after requesting a habeas form, Petitioner may be transferred to Greene County, MO after his final hearing on April 2, 2026.

Due to the deviant and errant strategy of DHS/ICE/ERO in transferring and moving

detainees in Habeas proceedings from the physical area of detention to defeat jurisdiction, the courts have responded by holding jurisdiction over the Director of the ICE Field Office and other responsible DHS Officials to execute its Habeas orders. Therefore, Petitioner is filing in this district and division which ultimately has jurisdiction over the ICE officials in the local Kansas City Field Office.

Furthermore, it is the Kansas City Field Office where the Petitioner was processed for detention, where the Immigration Court is located for his current removal proceedings, and where Respondent's Office of the Principal Legal Advisor of ICE is located, which over sees its court proceedings and is responsible for compliance with court orders. This is substantially more than the minimum contacts rule where federal courts have exercised jurisdiction over parties, and this court already has subject matter jurisdiction in a writ of habeas pursuant to 28 U.S.C. § 2241.

2.Respondent, Mathew Puter is named in his Official capacity as the Acting Kansas City Field Office Director of ICE. In this capacity, Respondent Chamberlain is responsible for the Administration and Management of ICE Enforcement Removal Operation in Kansas City and exercises control over Petitioner's custody at the Chase County detention facility. He is, therefore, the legal custodian of Petitioner. Mr. Chamberlain's office is located at 11125 North Ambassador Drive, Kansas City, Missouri.

3.Respondent, Todd Lyons is named in his official capacity as the Acting Director of ICE. In this capacity, Respondent Lyons is responsible for the Administration of Federal. Immigration Law and the execution of detention and removal determinations, and, as such, he is a legal custodian of Petitioner. Respondent Lyons' office is located at 500 12th Street, SW, Washington D.C. 20536.

4.Respondent, Markwayne Mullin is named in his official capacity as Secretary of the United States Department of Homeland Security. In this capacity, he is responsible for the Administration of Federal Immigration Laws pursuant to 8 U.S.C. § 1103(a); he routinely transacts business in the Western and Eastern districts of Missouri and Kansas, and he is legally responsible for pursuing Petitioner's detention and removal. As such, he is a legal custodian of Petitioner. Respondent Mullin's office is located at the U.S. Department of Homeland Security, 3801 Nebraska Avenue, Washington D.C. 20016.

**5.**Respondent, Marcos Charles is named in his official capacity as Director of the Executive Office for Immigration Review (EOIR). He is responsible for the oversight of Immigration proceedings, including over sight of immigration Judges, and ensuring that proceedings are conducted in accordance with the applicable laws. His address is 5107 Leesburg Pike, Falls Church, Virginia 22041.

6.Respondent, Pamela Bondi is named in her official capacity as Attorney General of the United States. In this capacity, she is responsible for the Administration of the Federal Immigration Laws, directly and by delegation to the Executive Office of Immigration Review, pursuant to 8 U.S.C. § 1103(g). She routinely transacts business in the Western and Eastern District of Missouri and Kansas. Her office is located at 950 Pennsylvania Avenue NW, Washington O.C. 20530.

7.Respondent, Jacob Welch is named in his official capacity as warden of the Chase County detention facility under contract with ICE to house noncitizen detainees. In this capacity, he is responsible for the oversight and custody of detainees at the Chase detention facility. He is therefore currently the physical custodian of Petitioner, who is detained at the facility until his transfer after his final removal hearing on April 2, 2026, to Greene County as per cursory notice provided to Petitioner by the staff of the Chase facility. Therefore, Jim Arnott, warden of Greene County, MO detention facility has been included as a cautionary measure to prevent any disruption of jurisdiction that may be caused by the notified ICE transfer.

*Jeffrey P. Ray, or the designated U.S. Attorney, will be served at the Office of the United States Attorney located at,

400 East 9th St.

Kansas City, Missouri 64106

**II.EXHAUSTION OF REMEDIES**

There is no statutory requirement for exhaustion of administrative remedies where the Petitioner challenges the lawfulness of his detention. Arango-Marquez v. INS, 346 F.3d 892, 897 (9th Cir. 2003). Any requirement of administrative exhaustion is therefore purely discretionary. In making that decision, the court should consider the urgency of the need for immediate review." Where a person is detained by Executive order... the need for collateral

review is most pressing... In this context the need for habeas corpus is more urgent." Boumediene v. Bush, 553 U.S. 723, 783 (2008) (waiving administrative exhaustion for executive detainees).

Moreover, the exhaustion "doctrine is not without exception." Ashley v. Ridge, 288 F. Supp, 2d 662, 666 (D.N.J. 2003). Courts have found that the exhaustion of administrative remedies may not be required when available remedies provide no opportunity for adequate relief, an administrative appeal will be futile, or if the Petitioner has raised a substantial constitutional question. Id, at 666-67. Further, the BIA does not have jurisdiction to adjudicate constitutional issues. Therefore, any administrative proceeding will be futile because Petitioner raises substantial constitutional due process claims. See Hoxha v. Holder, 559 F.3d 157, 161 (3d Cir. 2009) (holding that no exhaustion is required if the BIA does not have jurisdiction to consider constitutional claims).

Since the initiation of this proceeding on September 15, 2025, Petitioner made an oral motion for bond on September 24, 2025, during the master calendar hearing and was denied with the remark that Petitioner may utilize his Joseph hearing for a bond motion, but the court stated it "does not believe that the Department is not unlikely to prevail" in this case.

Thereafter, the Joseph bond motion was denied. A third attempt was made on December 18, 2025, after filing the Petitioner's brief for reconsideration of custody and release on bond.

This was also denied with a remark from the court that Petitioner may move for Habeas since a BIA appeal of his removal will take at least ten months. This remark was made by the court even before all the witnesses had testified and all evidentiary submissions had been completed.

Hence, any further request for such consideration before the same adjudicator would be futile where DHS and EOIR have taken the position that for detainees in Petitioner's position, detention is mandatory and bond is categorically not permitted. Further, in September 2025, the BIA held that a person in Petitioner's circumstances is not entitled to consideration for

release on bond. Matter of Yajure-Hurtado, 29 I&N Dec. 206 (BIA 2025). Thus, the need for this Habeas is not only imperative but also urgent.

**III.BACKGROUND**

On September 15, 2025, Petitioner, Mirza Reazuddin, a United States Citizen, was arrested under the name of his deceased double cousin, Mirza Uddin (A026035042), as he exited a courthouse from his divorce proceeding. He was arrested under a field warrant that has been held unconstitutional by an Illinois district court. He was taken into custody and was placed in mandatory detention pursuant to INA § 236(c); 8 U.S.C. § 1226(c), based on his June 2024 conviction for wire fraud in the Western District of Missouri. Petitioner's mandatory detention, purportedly based on charges under INA § 237(a)(2)(A)(iii) and an additional charge under INA § 237(a)(3)(D) per Form 1-261, is fundamentally inapplicable. Such provisions govern the detention of aliens, and as the government has failed to rebut Petitioner's substantial evidence of United States Citizenship, the statutory basis for his detention is void. Arguendo, even if the government could prove alienage, Petitioner would fall within a recognized exception, having established a continuous presence in the United States since he was fifteen years of age, a fact that warrants consideration for relief from removal, not mandatory detention. However, Petitioner believes that mandatory detention is inapplicable here for a more fundamental reason—Petitioner is a United States Citizen born in St. Petersburg, Florida nearly 70-years ago on July 9, 1957.

Although he is in possession of a certificate of live birth issued by a midwife, he recently discovered that it was not registered with the Florida Department of Health, causing a quagmire of problems in the current proceedings. In addition, in 2020, Petitioner was victimized when he ordered his birth certificate through US Vital Records—a fraudulent company masquerading as a genuine provider of vital records online. This only compounded the problem, but the silver lining is that numerous Government Agency records including NCIC, NCL, DHS, ICE, DOJ, FBI, CBP, and the U.S. Marshals all

affirmatively confirm Petitioner's United States Citizenship. Even the background report by Federal Probation and Parole confirmed his United States Citizenship. Despite a plethora of evidence of Petitioner's

U.S. Citizenship, the Government has engaged in a preposterous effort to raise a dead man, even when a government-issued Death Certificate is in evidence and the death has been corroborated by his wife and others in the testimonial record.

A living witness to Petitioner's midwife-assisted birth was located and was scheduled to testify at the hearing on February 11, 2026, together with the deceased Mr. Uddin's wife. However, on February 9, 2026, the Department, in a brazen attempt to terrorize Petitioner's witnesses, had three DHS/ICE agents barge into the witness's medical clinic, flashing badges and falsely accusing her of interfering with a judge's deportation order where one did not exist. The Department's strong-arm tactics, terrorizing and embarrassing the witnesses out of testifying, has irreparably prejudiced Petitioner's defense and deprived him of his constitutional due process rights.

Petitioner has been in the hospitality business for nearly half a century, having operated twelve hotels in ten states. He owns residential properties in Overland Park, Kansas; Atlanta, Georgia; and Anaheim Hills, California. Over many years, Petitioner has provided accommodation assistance relief for Red Cross disaster victims, set up community health clinics for the Rotary Club, worked with church groups to assist the community, and remained engaged in philanthropic work.

Despite such strong community presence, his release was twice denied based on mandatory detention where the standard of release on bond applied by the judge was, "I do not think prosecution is not unlikely to prevail in the merit hearing." The court has taken this stance when Petitioner had already presented substantial prima facie evidence of his United States Citizenship, and the Department's evidence consisted only of unauthenticated and unreliable internal agency forms of Mr. Uddin with no nexus shown to the Petitioner. This was an absolutely biased, predisposed ruling that has violated his due process and constitutional

rights granted by the Constitution of the United States.

Petitioner has been detained for five months in ICE detention and faces significant additional detention without a showing that such detention is necessary to prevent him from fleeing or causing harm, considering his age, health issues, community ties, and impeccable Federal probation record.

## IV.STANDARD

A district court may grant a Writ of Habeas Corpus to any person who demonstrates he is" in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. 9 2241(c)(3). The right to challenge the legality of a person's confinement through a petition for a writ of habeas corpus extends to those persons challenging the lawfulness of immigration detention. See Preiser v. Rodriguez, 411 U.S. 475 (1973); Zadvydas v. Davis, 533U.S.678(2001); and Demorev. Kim, 538U.S.510(2003).

The Petitioner bears the burden of proving that he is being held contrary to law, and because the habeas proceeding is civil in nature, the movant must satisfy his burden of proof by a preponderance of the evidence. Here, the Petitioner has provided fifteen pieces of corroborated prima facie evidence of his United States Citizenship and fifteen pieces of exculpatory evidence from the Department's own submission, none of which have been rebutted.

It appears the statutorily mandated burden-shifting roles are reversed here. The Department was first required to prove Petitioner's alienage with "clear, convincing and unequivocal" evidence before the burden shins to Petitioner to prove his citizenship by a preponderance of the evidence. See Woodby v. INS, 385 U.S. 276, 286 (1966) (holding that the government must prove its allegations in deportation proceedings with "clear, unequivocal, and convincing evidence"). What is more alarming is that the court, during the hearing on March 2, 2026, stated on the record that "there was no such burden shifting framework" and that Petitioner had to prove his case whether the Department proved theirs or not. Certainly, such a

misguided standard from the adjudicator contravenes statutory and U.S. Supreme Court precedents, violates Petitioner's constitutional right to due process, and likely sets forth a viable reason for the denial of his release from detention.

**V.JURISDICTION**

This action arises under the Fifth and Fourteenth Amendments to the U.S. Constitution. This court has subject matter jurisdiction over the Complaint and the Petition pursuant to 28 U.S.C. § 1331 and § 2241, Article I, Section 9, Clause 2 of the Constitution, and the All Writs Act, 28 U.S.C. § 1651. Petitioner's current detention as enforced by Respondents constitutes a "severe restraint" on Petitioner's "individual liberty" such that Petitioner is "in custody in violation of the... laws... of the United States." Hensley v. Municipal Court, 411 U.S. 345, 351 (1973); see also 28 U.S.C. § 2241; Fay v. Noia, 372 U.S. 391, 430-31 (1963).

The United States has waived sovereign immunity for this action for injunctive relief against its agencies and officers who are sued in their official capacities. 5 U.S.C. § 702. The federal courts have jurisdiction to hear habeas corpus claims challenging the lawfulness of detention by DHS. Demore v. Kim, 538 U.S. 510, 517 (2003); Zadvydas v. Davis, 533 U.S. 678, 687 (2001).

Venue is proper in this district under 28 U.S.C. § 1391(e)(1) and 28 U.S.C. § 96, which states that the court shall be held in Kansas City. Currently, the Petitioner is detained in Chase County, but upon information and belief, Petitioner will be transferred to Greene County upon his final hearing on April 2, 2026. The Supreme Court's "immediate custodian" rule, articulated in Rumsfeld v. Padilla, 542 U.S. 426 (2004), has been adapted in the immigration context. The Eighth Circuit has recognized that ICE Field Office Directors, who exercise control over a petitioner's detention, are proper respondents. Kholyavskiy v. Schlepp, 9 F.4th 946, 949 (8th Cir. 2021) (holding that an ICE Field Office Director can be a proper habeas respondent). Many courts in this district, in order to deal with DHS's errant practices of transferring detainees to defeat jurisdiction, have held that the warden of any facility is

holding detainees on behalf of the Respondents, who are in fact in full control of Petitioner's detention. The warden only follows orders and directives of the Respondents in making any decision regarding Petitioner or any other immigration detainees in its facility. The fact is

ICE should not be able to render the court powerless merely by transferring Petitioner at its discretion, and at any rate, ICE and the U.S. Attorney are responsible for complying with the court's directives.

This district, in its holding in Eshdavlatov v. Arnott, 2025 U.S. Dist. LEXIS 226403, opined in the habeas corpus ruling in its footnotes as follows: “Petitioner’s amended complaint lists Sheriff Arnott as a party by virtue of his administration of the Greene County Jail where the Petitioner is currently detained... the court construes the proper party holding Petitioner in custody as the DHS through ICE. As DHS and ICE are utilizing the Greene County, MO jail to hold Petitioner and other detainees, the court expects its ruling to apply to the Government and those aiding the Government regarding this specific case.” The legislature never intended the custody rule to be written in stone, as is evident in the language of 28 U.S.C. § 2241(d), which grants concurrent jurisdiction. In this case, Petitioner was detained, booked, and processed by ICE in the Kansas City, Missouri Field Office. All hearings in Petitioner's proceedings are conducted in the Kansas City Immigration Court, and the Office of the Principal Legal Advisor overseeing the proceedings is also located in Kansas City, Missouri. Based on the reasoning of the Statute and prevailing case law, this district court has jurisdiction over Petitioner's complaint and writ of habeas corpus.

**VI.DUE PROCESS**

The Due Process Clause requires “adequate procedural protections” in civil detention cases. Zadvydas v. Davis, S33 U.S. 67g, 690 (2001). The courts have repeatedly recognized that civil commitment for any purpose constitutes a significant deprivation of liberty that requires due process protection. Addington v. Texas, 441 U.S. 418, 425 (1979). In United States v. Salerno, 481 U.S. 739, 755 (1987), the Supreme Court opined, “In our society liberty is the norm, and detention

prior to trial or without trial is the carefully limited exception." Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that the Due Process Clause protects. Zadvydas, 533 U.S. at 690. Here, the Petitioner, a United States Citizen, has been deprived of his liberty interest while the court and the government are prodding over 70-year-old ancient documents, lost evidence, faded memories of any possible living witnesses, and purged government records, all while this citizen, who has provided his certificate of live birth from July 9, 1957, corroborated by witnesses and fifteen other pieces of prima facie evidence of his citizenship, remains detained without any procedural relief.

The government concedes in its legal brief in support of removal that it has "no direct evidence" of Petitioner's alienage and further admits that it has very "small" evidence from which it is pleading with the court to draw "commonsense inference"—in other words, to make a speculative educated guess of Petitioner's alienage, a standard running head-on against the required "clear, convincing" evidence while he remains in mandatory detention. The court continued the matter for five months and twelve hearings, hoping there will be a break for the Department to prove its case or hoping that Petitioner will falter, while continuing to proclaim that it "does not believe that the Department is not unlikely to prevail in the merit hearing." Based on such biased predisposition, it twice denied Petitioner's motion for reconsideration of custody and his release.

But what followed thereafter violates the sanctity of our revered justice system and makes a mockery of the protections afforded to "We the People" by our Constitution. When the Department realized that the Petitioner was able to defend his case from within the four walls of his unlawful detention, on February 9, 2026, three DHS/ICE Agents in Chicago brazenly entered the busy medical clinic of one of Petitioner's key witnesses. In a show of force, they warned her to stay out of "Uddin's case" or she would be criminally charged for interfering with a judge's deportation order of an alien. This was a fraudulent threat, as no such order existed. Such egregious

conduct by the Department would "shock the conscience" of any tribunal and is downright culpable misconduct under the color of law. See Rochin v. California, 342 U.S. 165, 172 (1952) (holding that government conduct that "shocks the conscience" violates due process). In layperson's terms, this constitutes witness tampering, obstruction of justice, and a criminal threat under the color of law. The Department made every attempt to foil Petitioner's filing of his Motion for Sanctions against it but he was finally successful in doing so. The Department in its response does not deny the allegations but instead vilifies and maligns Petitioner's character in a red-herring attempt to deflect blame. This reprehensible act by the Department has terrorized and alienated his two key witnesses and his family members. This detention is now cruel and unusual punishment, end thus an expedited grant of this habeas petition is necessary to remedy this unconstitutional and unlawful detention.

**VII. COMPLAINTS FOR RELIEF**

**COUNT I: INVALID FIELD WARRANT VIOLATES DUE PROCESS**

Petitioner's detention pursuant to an invalid field warrant, particularly as a United States Citizen and a known subject of arrest without a showing of exigent circumstances as required under 8 U.S.C. § 1357 et. seq., was unlawful and violates his due process rights under the Constitution of the United States.

On October 27, 2025, the United States District Court for the Northern District of Illinois found such a practice by DHS/ICE unconstitutional. Nava v. Dep't of Homeland Sec., 2025

U.S. Dist. LEXIS 198295 (N,D. Ill. Oct. 27, 2025). Petitioner was detained pursuant to Form 1-200, a field warrant that was signed by ICE Agent Anthony Demarco, without a Notice to Appear (NTA) issued before or concurrently as set forth in the district court's order. An arrest based on a constitutionally defective warrant is an egregious violation that can taint the subsequent proceedings. See INS v. Lopez-Mendoza, 468 U.S. 1032, 1040-41 (1984) (noting that egregious violations of the Fourth Amendment can warrant suppression in deportation proceedings).

If the warrant is invalid, then Petitioner's arrest and detention based on such a warrant are unlawful and violate his constitutional right to due process, including

notice and an opportunity to be heard, and to be free from restraints without a showing why a mandatory civil detention is necessary for a United States Citizen, which infringes upon his constitutionally protected liberty interest. This Court shall remedy such unlawful acts of DHS/ICE by granting the relief sought by Petitioner in this Habeas Corpus Petition.

**COUNT II: PETITIONER'S MANDATORY DETENTION VIOLATES HIS CONSTITUTIONAL RIGHT**

The mandatory detention of Petitioner, a United States Citizen, violates his constitutional rights since he is not subject to the jurisdiction of the immigration court without first establishing his alienage, which is a prerequisite for the court to exercise jurisdiction. This entire proceeding is predicated on flimsy evidence belonging to a dead man. The Department's mandatory detention of Petitioner is based on a preposterous theory that Petitioner is his deceased double cousin, Mirza Uddin.

This theory was borrowed from Petitioner's estranged wife, fraught in a contentious divorce proceeding. On December 18, 2025, the Department, in its legal brief on removal, conceded that it has no direct evidence of Petitioner's alienage (DHS Bf. Pg. 14) and is pleading with the court to draw "common sense inference" from a small quantity of evidence, which is primarily more than forty-year-old internal agency forms of Mr. Uddin with no nexus shown to the Petitioner. On the contrary, Petitioner has proffered fifteen pieces of prima facie evidence of his United States Citizenship, including government records and documents, and another fifteen pieces of unrebutted exculpatory evidence and Mr. Uddin's photograph from the Department's own evidentiary submission, including a government-issued death certificate for Mr. Uddin. The Supreme Court has held that even for aliens, mandatory detention under 8 U.S.C. § 1226(c) is permissible only for a "brief period" and detention becomes constitutionally suspect when it becomes prolonged. Demore v. Kim, 538 U.S. 510, 531 (2003); see also Jennings v.

Rodriguez, 583 U.S. (2018). For a United States Citizen, any period of mandatory immigration detention is an unconstitutional deprivation of liberty.

The Department is hanging on to a fingerprint report by its unqualified expert who admitted on cross-examination that he is not qualified to make a fingerprint analysis for shared DNA heritability of close relatives such *as* Petitioner and his double cousin Uddin, who are offspring of monozygotic parents. Further, his work was rebutted by Petitioner's fingerprint expert. But what violates Petitioner's statutory and constitutional due process rights is his failure to provide details of his analysis for cross-examination and the record of any independent examiner as required under the ACE-V method for his analysis.

The Department's lack of "clear, convincing" evidence to meet its burden of proof to show Pet1tioner's alienage, while it detains a United States Citizen as it confoundedly falters through its dilemma of how to remove and deport a "dead man," violates Petitioner's substantial rights granted under the Constitution of the United States. Petitioner deserves to be released from detention while the government gets its act together.

**COUNT III: GOVERNMENT'S CULPABLE MISCONDUCT VIOLATES THE BILL OF RIGHTS GUARANTEED BY THE US CONSTITUTION**

What follows here will jar the conscience of any reasonable adjudicator or tribunal. The Department, vexed by its repeated failure to prove Petitioner's alienage in the face of a government-issued death certificate and corroborated testimony of his death by his wife, felt the final straw was Petitioner filing his 70-year-old ancient certificate of live birth with corroborating affidavits. Driven by indignation and believing witnesses and family to be the instigators, on February 9, 2026, three DHS/ICE Agents barged into a busy medical clinic, flashing badges and demanding to speak to Petitioner's witness, who is a Physician Assistant at the clinic. The message was clear:" why are you interfering with Uddin's case "—

"Testifying for an alien under deportation is interfering with the court's order" (no such order existed)— "he has nothing to lose but you will lose your license." This strong-arm tactic and wild, wild west brand of justice constitute witness tampering, obstruction of justice, and a criminal threat under the color of law. This shakedown was designed to, and did, create intense fear, terror, panic, and embarrassment, given the fraught situation with ICE nationwide.

The government's reprehensible conduct has resulted in Petitioner's family, friends, and associates severing all ties with him while he remains in detention, being deprived of companionship, emotional support, and legal and financial assistance. Such sufferings at the hands of the government implicate Petitioner's freedom of speech, freedom of association, and the right to present witnesses and evidence in his defense, and to seek solace and financial assistance from family and friends. The Eighth Circuit has recognized that

egregious government misconduct can violate due process. See, e.g., Gunderson v. Hvass, 339 F.3d 639, 644 (8th Cir. 2003) (recognizing due process violations where government conduct is "so outrageous and shocking that it exceeds the bounds of fundamental fairness"). Subjecting Petitioner to such conditions in detention rises to the level of cruel and unusual punishment and violates Petitioner's constitutional rights guaranteed under the Constitution of the United States.

**COUNT IV: IMPOSSIBILITY OF PROOF—RAISING THE DEAD—AN ACT AGAINST NATURE—MAXES DEPORTABIUTY UNFORESEEABLE**

The government's absurd and preposterous theory that Petitioner is his double cousin, Mirza Uddin, flies in the face of substantial unrebutted evidence, which includes multiple pieces of the Government's own evidence repeatedly reaffirming Petitioner as a United States Citizen—and a government-issued death certificate confirming Mr. Uddin's death December 17, 1996. The deceased Mr. Uddin's wife was to testify confirming his death on November 19, 2025, and waited in the virtual lobby for more than two and one-half hours,

but the court concluded the hearing since time did not permit.

Once again, on February 11, 2026, she was to testify, but on February 9, 2026, three DHS/ICE Agents brazenly barged into her medical clinic and terrorized her out of testifying. There are testimonial affidavits on record that confirm the demise of Mr. Uddin. But none of this deters the Government's senseless pursuit—to raise the dead—an act against nature. Its sense of pragmatism has dwindled. A government that has issued a death certificate for a deceased person will not issue travel documents for a dead man to travel. This alone not only makes deportability reasonably unforeseeable but an elusive feat to accomplish. Such removal and deportation proceedings will involve lengthy court proceedings—and each day in detention perpetuates the deprivation of Petitioner's liberty interest. The Supreme Court has held that detention pending removal is statutorily limited to a period reasonably necessary to bring about that alien's removal from the United States and does not permit indefinite detenGōn. Zadvydas v. Davis, 533 U.S. 678, 689 (2001). Here, where removal is a logical and practical impossibility, Petitioner's continued detention serves no legitimate purpose. To remedy this, a grant of his expedited Habeas Corpus petition—releasing him on his own recognizance—will alleviate the pain and suffering of this 70-year-old disabled individual in poor health, which he is experiencing in his unlawful mandatory detention for over five months, infringing upon his constitutional rights.

**COUNT V: PETITIONER'5 SERIOUS HEALTH CONCERNS IN DETENTION IS A DIMINUTION IN HIS QUALITY OF LIFE**

Petitioner's age-related chronic illnesses and the lack of adequate medical care in detention violate Petitioner 's due process rights and the prohibition against cruel and unusual punishment. Nearing age seventy, Petitioner is ambulatory with the support of a walker. He suffers from chronic venous insufficiency in his lower extremities, and long-term neglect may substantially lead to amputation. Petitioner's ability to provide self-care has diminished—taking sponge baths in his

holding cell since he was accustomed to a care provider at home. Petitioner has initial stages of cataracts and hearing loss. Due to his age and feeble health, immunity has been a primary concern in detention where new inmates are brought into the pod afflicted with various communicable sicknesses. At a February 25, 2026 hearing, Petitioner appeared before the court sick and wrapped in a blanket, and the court made a record of it. During COVID, Petitioner suffered a saddled pulmonary embolism which has damaged his heart and lungs. Petitioner, therefore, suffers from shortness of breath and occasional chest pain. These are chronic geriatric health issues which the detention facility is neither designed to cope with nor able to manage. Petitioner has a constitutional right to be free from conditions of confinement that amount to punishment. Bell v. Wolfish, 441 U,S. 520, 535 (1979). The Eighth Circuit has consistently held that deliberate indifference to a detainee's serious medical needs violates due process. See, e.g., Vaughn v. Greene County, 438 F.3d 845, 850 (8th Cir. 2006). Based on such exigent reasoning, Petitioner requests that this Court grant his Habeas Corpus petition and order him released on his own recognizance and put an end to this unlawful detention.

Petitioner's impeccable record on federal probation and his community ties make him suitable for release on his own recognizance, as he will also remain under federal probation supervision. As stated previously, he has been denied bond twice by the same immigration judge, and a third bond attempt will be futile and fruitless.

**VII.TEMPORARY RESTRAINING ORDER (TRO)**

Petitioner seeks an order from this Court enjoining Respondents from transferring Petitioner from the jurisdiction of the Kansas City Field Office of ICE, the Office of Enforcement and Removal Operations (ERO), and this district. Petitioner is currently in removal proceedings in the Kansas City Immigration Court. The transfer could entail being removed from his home, family, friends, and associates to a remote area, as ICE has historically done to defeat

jurisdiction and demoralize detainees who venture to seek Habeas Corpus action. Petitioner recognizes that the court must weigh the following interests in issuing a TRO: (1) success on the merits; (2) irreparable harm absent an injunction; (3) the balance of equities between the harm to the movant and any harm inflicted on interested parties; and (4) the public interest. The Eighth Circuit applies this well-established four-factor test. Data phase Sys., Inc. v. C L Sys., Inc., 640 F.2d 109, 114 (8th Cir. 1981).

Petitioner requests that this court grant a TRO by virtue of his due process arguments. Absent an injunction, irreparable harm to Petitioner will result if he is moved out of the court's jurisdiction, which will make any order issued by this court meaningless. The balancing of the equities *will* tip decidedly in favor of the Petitioner, as a transfer would exacerbate his suffering and health condition. Lastly, the public interest strongly favors redressing Petitioner's detention in violation of the constitutional due process clause, as Congress intended. Therefore, the reasons cited above favor an issuance of a TRO in favor of Petitioner.

**IX.COST REIMBURSEMENT REQUEST**

Petitioner is aware that under the Equal Access to Justice Act (EAJA), the court may award a prevailing party's fees and costs. Petitioner is in detention and has incurred costs with this petition, as the detention facility has categorically refused to help in any type of legal matter. Petitioner is pro se and realizes he may not qualify for fees but is requesting the reimbursement of his costs paid to freelance helpers in the preparation and filing of this petition. Petitioner, therefore, requests that if costs alone are allowed under EAJA, that will certainly go a long way in alleviating his financial condition while he is in detention.

**X.CONCLUSION**

In conclusion, the Court will glean from this petition that Petitioner's substantial rights have been infringed and violated—from his unlawful arrest to his unlawful and unreasonably indefinite detention; the refusal of a reasonable bond; the use of strong-arm tactics in terrifying his witnesses from testifying; and alienating his family, friends, and associates with

false threats of prosecution for interfering with a judge's order of deportation when no such order exists. The cumulative effect of all this rises to the level of cruel and unusual punishment in violation of its prohibition under the Constitution of the United States.

Certainly, an expedited grant of this petition will alleviate the pain and suffering Petitioner has endured for more than five months in unlawful detention as a citizen of the United States.

**XI.PRAYER FOR RELIEF**

WHEREFORE, Petitioner prays that the court will grant the following relief:

1.Assume Jurisdiction over this matter.

2.Issue a Writ of Habeas Corpus directing Respondents to immediately release Petitioner on his own recognizance subject to an appropriate order of supervision; because any bond hearing before the same adjudicator as the previous two summarily denied bond motions will be futile and in all probability may not yield a different result; or direct such adjudicator to meaningfully consider alternatives to detention such as release with supervision and electronic monitoring; (Note: Once released, Petitioner will also reinstate his federal probation and continue supervision uninterrupted).

3.Enjoin Respondents from relocating Petitioner out of the jurisdiction of the court prior to compliance with this order.

4. Order respondent upon released to return to petitioner any personal property, including personal identification documents.

5. Order that if respondent resume petitioner absent, absent due to circumstances be must do so with a warrant under 12 26 A and provide our timely bond hearing.

6.If allowed under EAJA, award Petitioner's costs and reasonable consultation fees in this action as provided under 28 U.S.C. § 2412 or other statute.

7.Grant any other or further relief that this Court deems just and proper.

Respectfully submitted,

Mirza Reazuddin, Pro Se
Mirza Reazuddin

301 S. Walnut St. Cottonwood Falls, KS 66845

**PROOF OF SERVICE**

I, Mirza Reazuddin, declare under penalty of perjury under the laws of the United States of America that on March 24, 2026, I served a true and correct copy of the foregoing COMPLAINT AND PETITION FOR WRIT OF HABEAS CORPUS by placing it in the

U, S. Mail, postage prepaid, addressed to the following:

1.Mathew Puter Acting Kansas City Field Office Director U.S. Immigration and Customs Enforcement 11125 North Ambassador Drive Kansas City, MO 64153

2.Todd Lyons Acting Director U.S. Immigration and Customs Enforcement S00 12th Street, SW Washington, DC 20536

3.Markwayne Mullin Secretary U.S. Department of Homeland Security 3801 Nebraska Avenue, NW Washington, DC 20S39

4.Marcos Charles Director Executive Office for Immigration Review 5107 Leesburg Pike Falls Church, VA 22041

5.Pamela Bondi Attorney General of the United States U.S. Department of Justice 950 Pennsylvania Avenue, NW Washington, DC 20530

6.Jacob Welch 5th County Chase County Facility 301 S. Walnut St Cottonwood Falls, KS 66845

7.Jim Arnott, Jim Aber in advance 11199 N. Haseltine Rd. Springfield, MO 65802

8.Jeffrey P. Ray, or designated U.S. Attorney Office of the United States Attorney Charles Evans Whittaker Courthouse 400 E. 9th Street, Room 5510 Kansas City, MO 64106 Executed on this 30th day of March, 2026.

Mirza Reazuddin, Pro Se

301 S Walnut

Cottonwood Falls, KS 66845